**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GRACE BAHR, Executor of the Estate of )
ANN MIHOK, deceased, )
                     )
         Plaintiff, )
                     )     Case No. 07-CV-3931
     v. )
                     )     Judge Robert M. Dow, Jr.
SUNRISE SENIOR LIVING, INC. A/K/A )
SUNRISE ASSISTED LIVING, )
                     )
         Defendant. )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Sunrise Senior Living, Inc's motion for summary judgment [54]. For the following reasons, Defendant's motion for summary judgment [54] is granted.

**I.    Background**

**A.    Procedural History**

On April 26, 2007, Plaintiff Grace Bahr filed a complaint in the Circuit Court of Cook County, Illinois, against Defendant Sunrise Senior Living, Inc., alleging negligence and violations of the Nursing Home Care Act, 210 ILCS 45/*et seq*., in the death of Ann Mihok, a resident at an assisted living facility known as Sunrise Assisted Living of Palos Park. On July 12, 2007, Defendant removed this matter to this Court. On December 6, 2007, in its answers to Plaintiff's interrogatories, Defendant Sunrise informed Plaintiff of Defendant's belief that it was not the correct defendant in this suit. In response, on March 5, 2008, Plaintiff filed a motion for leave to file an amended complaint, seeking to name additional defendants. The Court denied Plaintiff's motion, concluding that the statute of limitations on Plaintiff's claims had run and that

Plaintiff could not show that the proposed amendment related back to Plaintiff's original complaint. On November 8, 2008, the Court gave Plaintiff leave to conduct additional, limited discovery regarding the scope of Defendant's involvement with Sunrise of Palos Park, the facility where Ann Mihok resided prior to and at the time of her death.

B. **Factual History**[1]

Defendant Sunrise Senior Living, Inc. ("Sunrise") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Virginia. Defendant Sunrise is the parent corporation for a wholly owned subsidiary, Sunrise Senior Living Management, Inc. ("Sunrise Management"). Sunrise Management is a corporation organized and existing under the laws of Virginia. Defendant Sunrise and Sunrise Management file separate annual corporate reports. At the time of Ms. Mihok's death, Sunrise Management was the licensee, manager, and operator for Sunrise of Palos Park (also known as Sunrise Assisted Living of Palos Park), where Ms. Mihok resided, and Sunrise Second Assisted Living Holdings, LLC ("Sunrise Holdings") was the real estate owner of the facility. Sunrise of Palos Park is licensed as an assisted living facility under 210 ILCS 9/1 *et seq.* It is not licensed under the Nursing Home Care Act, 210 ILCS 45/1-101 *et seq.*

The individual assisted living communities, such as Sunrise of Palos Park, are assigned an Executive Director, who is responsible for managing and controlling the day-to-day operations of the community and who reports to the area manager's office. These individuals working at the area manager's office and at the Virginia headquarters were all employed by

---

[1] In her statement of facts and throughout her response brief, Plaintiff asserts several propositions that have no evidentiary support in the record. These unsupported factual assertions will not be considered by the Court in ruling on Defendant's motion for summary judgment. See *Marshall v. Local 701, Intern. Broth. of Elec. Workers*, 2008 WL 4389868, at *4 (N.D. Ill. Sept. 19, 2008); see also *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878 (7th Cir. 1998) (affirming district court's decision to strike portions of affidavit that were no more than conclusory allegations).

Sunrise Management.  Defendant presented Kathleen Ridder, the Executive Director responsible for managing and overseeing Sunrise of Palos Park, for deposition.  Ms. Ridder produced both her W-2 and earnings statement, which established that Sunrise Management paid her salary. Ms. Ridder also testified that the policies relating to care of the residents were developed by Sunrise Management and carried out by the employees at Sunrise communities.  Ms. Ridder testified that she executed many of the vendor contracts on behalf of Sunrise of Palos Park, and, for the larger contracts, Sunrise Management employees in Virginia were consulted.  Ms. Ridder acknowledged that Paul and Theresa Klaassen (co-founders of Defendant Sunrise), Tiffany Tomasso (COO of Sunrise), and Tom Newell (employee of Defendant Sunrise) occasionally would attend meetings with Executive Directors, during which time they might speak about the philosophy and mission of Sunrise Management.  Additionally, Tomasso, Bradley Rush, and Jeffrey Jasnoff had dual roles with the parent (Defendant Sunrise) and the subsidiary (Sunrise Management).

In June 2001, Plaintiff, as the responsible party for Ann Mihok, entered into a resident contract with Sunrise Management for the lodging, care, and services for Ann Mihok.  Plaintiff did not enter into a contract with Defendant Sunrise.  From May 17, 2001 through April 27, 2005, Ann Mihok resided at Sunrise of Palos Park.  Ms. Mihok suffered from Alzheimer's disease and/or dementia and required assistance with some of her daily living activities.  On April 27, 2005, Ann Mihok choked while eating lunch, and on May 2, she died.  At the time of her death, Ms. Mihok was ninety-five years old.

**II.     Analysis**

    **A.     Summary Judgment Standard**

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004).  To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

**B.    Applicable Law**

In a diversity action such as this, the Court applies the substantive law of Illinois, as the Court believes the Illinois Supreme Court would apply it, to the negligence and Nursing Home Care Act claims. *Association Ben. Services, Inc. v. Caremark RX, Inc*., 493 F.3d 841, 849 (7th Cir. 2007). However, with regard to Plaintiff's allegations that Defendant is liable as a parent corporation for the actions of its subsidiary, Illinois courts have established that the law of the state of incorporation applies. See *Retzler v. Pratt and Whitney Co*., 723 N.E.2d 345, 354 (1st Dist. 1999); *Stromberg Metal Works, Inc. v. Press Mechanical, Inc*., 77 F.3d 928, 933 (7th Cir. 1996). Defendant Sunrise Living was incorporated in Delaware, so Delaware law applies to Plaintiff's claims of parent corporate liability.

**C.    Claims Pursuant to the Nursing Home Care Act**

The Nursing Home Care Act ("NHCA") was created as a comprehensive scheme intended to improve the care and treatment of nursing home residents "amid concern over reports of inadequate, improper and degrading treatment of patients in nursing homes." *Harris v. Manor Healthcare Corp*., 489 N.E.2d 1374, 1377 (1986) (internal quotations omitted). However, the NHCA explicitly excludes "any assisted living or shared housing establishment licensed under the Assisted Living and Shared Housing Act," from the facilities licensed and regulated by the NHCA. 210 ILCS 45/1-113(10). Assisted living facilities are licensed and regulated by the Assisted Living and Shared Housing Act "ALSHA", 210 ILCS 9/1 *et seq*. Thus, the NHCA does not apply to licensed assisted living facilities and such facilities cannot incur liability under the NHCA. Here, Sunrise of Palos Park is a licensed assisted living facility under the ALSHA. As such, the NHCA does not apply to Sunrise of Palos Park and cannot be used to impose liability in this case.

Even if the NHCA did apply, it does not impose liability on a parent corporation for the acts of its subsidiaries. Section 3-601 states: "The owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident." 210 ILCS 45/3-601. As defined by the NHCA, the owner is either the party who owns the facility or who operates the facility. 210 ILCS 45/1-119. A licensee is the entity licensed by the Illinois Department of Public Health to operate the facility. 210 ILCS 45/1-115. The record shows that Defendant Sunrise Living was neither the owner nor the licensee of the facility. Rather, it was the parent corporation for its wholly owned subsidiary, Sunrise Management. Sunrise Management was both the licensee and operator of the facility. Sunrise Holdings was the owner of the physical plant. Accordingly, if the NHCA applied, then Sunrise Management or possibly Sunrise Holdings might be liable for violations of the NHCA. But Defendant – who did not own, operate, or hold a license for the facility – cannot be held liable under the NHCA.[2] Thus, summary judgment is appropriate on Plaintiff's claims under the NHCA.

**D.    Negligence Claims**

*1.    Duty under a general negligence inquiry*

To sustain a cause of action for negligence, Plaintiff must show that Defendant Sunrise owed and breached a duty of care, proximately causing Plaintiff's injury. *Chandler v. Illinois Central R.R. Co.*, 798 N.E.2d 724, 728 (2003). The threshold question is the existence of a duty, which is a question of law for the Court to decide. *Id.* In assessing whether Defendant owed a duty to Plaintiff, the Court must determine whether the parties stood in a relationship with one another such that the law imposed upon Defendant an obligation of reasonable conduct for the

---

[2] Perhaps conceding the issue, Plaintiff, in her response brief, did not address any of Defendant's arguments with respect to her claims under the Illinois Nursing Home Care Act nor did she offer any arguments of her own.

benefit of Plaintiff. See *Kirk v. Michael Reese Hosp.*, 513 N.E.2d 387, 396 (1987). Factors to consider include: (1) the reasonable foreseeability that the defendant's conduct may injure another; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing the burden upon the defendant. *Id.*

Under this basic negligence inquiry, Plaintiff has not established that Defendant owed the decedent any duty, because the parties did not stand in any relationship to one another. Plaintiff did not enter into a contract with Defendant; rather, Plaintiff contracted with Sunrise Management to provide lodging, care, and services for Ms. Mihok. Defendant did not own or manage Sunrise of Palos Park; again, Sunrise Management operated and managed Sunrise of Palos Park, controlled the day-to-day operations of the facility, and did not employ, direct or control any of the employees who provided care to the decedent. Plaintiff has not presented any facts that would lead the Court to conclude that Defendant owed the decedent a duty, and thus she has failed to satisfy the general negligence inquiry.[3]

### 2. Sunrise's liability as a parent corporation

A corporation and its shareholders are distinct entities. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). The doctrine of piercing the corporate veil is an exception to this rule, applied in the case of fraud or other limited circumstances. *Id.* at 475. Illinois courts have established that the law of the state of incorporation applies to allegations that a parent corporation may be liable for the acts of its subsidiary (see *Retzler*, 723 N.E.2d at 354; *Stromberg Metal Works, Inc.*, 77 F.3d at 933); thus, Delaware law applies to Plaintiff's potential claims of parent corporate liability.

---

[3] Plaintiff implicitly acknowledges her shortcomings with respect to a general negligence theory, instead focusing her arguments in her response brief on a piercing-the-corporate-veil theory.

Under Delaware law, distinctions between a parent and a subsidiary may be disregarded, and the parent may be found the ultimate party in interest, "when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved." *Pauley Petroleum Inc. v. Continental Oil Co.*, 239 A.2d 629, 633 (Del. 1968). A plaintiff must produce evidence that demonstrates the parent corporation's complete domination and control of the subsidiary. See *Wallace v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999). The degree of control required is "exclusive domination and control * * * to the point that [the subsidiary] no longer [has] legal or independent significance of [its] own." *Id*. at 1184. Additionally, Delaware courts require an element of fraud or similar injustice to pierce the corporate veil under an alter ego theory. *Id*. at 1183. Merely presenting evidence of dominion or control of the parent over the subsidiary, without evidence of fraud or similar injustice, will not support alter ego liability. *Outokumpu Engineering Enterprises, Inc. v. Kvaerner EnviroPower Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996). Plaintiff does not dispute any of these legal contentions; instead, she contends that numerous issues of fact exist, which make summary judgment inappropriate.

Unfortunately for Plaintiff, the factual issues to which she points fail to come close to supporting the legal theory of piercing the corporate veil. Sunrise was incorporated in Delaware in 1994, while Sunrise Management was incorporated in Virginia in 1981, thirteen years before Sunrise was formed. Sunrise Management's corporate headquarters is located in Virginia, and it has several area management offices throughout the country. The individual assisted living communities, such as Sunrise of Palos Park, are assigned an Executive Director, who is responsible for managing and controlling the day-to-day operations of the community and who reports to the area manager's office. Those individuals working at the area manager's office and

at the Virginia headquarters were all employed by Sunrise Management.  Not only was Sunrise Management the licensee (the entity authorized by Illinois to operate and manage Sunrise of Palos Park), it also employed all of those providing care to the residents at Sunrise of Palos Park. For instance, Kathleen Ridder, the Executive Director responsible for managing and overseeing Sunrise of Palos Park, produced both her W-2 and earnings statement, which established that Sunrise Management paid her salary.  Ms. Ridder also testified that the policies relating to care of the residents were developed by Sunrise Management and carried out by the employees at Sunrise communities.  Ms. Ridder testified that she executed many of the vendor contracts on behalf of Sunrise of Palos Park, and, for the larger contracts, Sunrise Management employees in Virginia were consulted.

Plaintiff correctly points out that a few individuals held positions with both Sunrise and Sunrise Management; however, there is nothing improper about overlapping directors and officers within the parent-subsidiary corporate structure.  See *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2nd Cir. 1988) (stating that "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.").  Rather, interlocking directorates is commonplace among modern business enterprises and does not furnish sufficient proof of control to pierce the corporate view.  *Id*. at 60; see also *U.S. v. Bestfoods*, 524 U.S. 51, 62 (1998) (stating that "a duplication of some or all of the directors or executive officers [will not] be fatal" or create liability beyond the assets of the subsidiary).  Additionally, while Ms. Ridder acknowledged that Defendant Sunrise representatives Paul and Theresa Klaassen, Tiffany Tomasso, and Tom Newell occasionally would attend meetings and training with Executive Directors of various facilities, no evidence has been presented that they dominated or controlled

these meetings; rather, the evidence suggests that they merely attended the leadership meetings and occasionally spoke about the philosophy and mission of Sunrise Management.

In short, the evidence presented in this case suggests that Defendant Sunrise and Sunrise Management acted in accordance with corporate formalities and in a traditional parent-subsidiary structure. Regrettably, Plaintiff waited until just prior to the expiration of the statute of limitations to bring suit and then sued the wrong party. After substantial discovery, there is no evidence of fraud or similar injustice, nor has Plaintiff presented sufficient evidence that Defendant Sunrise dominated or controlled its subsidiary, Sunrise Management. Because Defendant Sunrise and Sunrise Management are separate and distinct corporate entities that share a typical parent-subsidiary corporate relationship, summary judgment also is appropriate on Plaintiff's negligence claims.

## III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment [54]. Accordingly, judgment will be entered in favor of Defendant Sunrise Senior Living, Inc's and against Plaintiff Grace Bahr on all claims.

Dated: February 3, 2010

_____
Robert M. Dow, Jr.
United States District Judge